## FIDELITY-PHENIX FIRE INS. CO. v. DRURY.

No. 26654. Jan. 26, 1937.

Rittenhouse, Webster & Rittenhouse, for plaintiff in error.

L. B. Yates, for defendant in error.

PER CURIAM. The plaintiff, J. D. Drury, brought action against the defendant, Fidelity-Phenix Fire Insurance Company, on an insurance policy issued by defendant to plaintiff for the sum of $1,000 for a loss by fire of the property insured. The policy was issued April 29, 1932. The property insured, a dwelling house, was destroyed by fire August 22, 1934. Plaintiff attached a copy of the policy to his petition. Defendant answered by general denial, alleged failure by plaintiff to furnish proof of loss within the time required by the policy, and alleged a breach by plaintiff of a provision of the policy by which it was agreed that the policy should be void in case any change should take place in title or interest or possession of the property insured, or if assured should not be the sole and unconditional owner in fee of the property.

The land on which the insured building was located was owned by the state and plaintiff appears to have been in possession under a lease from the Commissioners of the Land Office.

On August 6, 1934, plaintiff, joined by his wife, executed an instrument designated "Relinquishment," the pertinent part of which is as follows:

"We, J. D. Drury and Callie E. Drury, husband and wife, hereby relinquish all our right, title and interest in and to the northwest quarter of sec. 16, twp. 1 S., range 21 WIM., Jackson county, state of Oklahoma, upon the condition that a new lease for the unexpired term be granted to John W. Smith of Olustee, Oklahoma, Rt. 1, who is a responsible person and qualified under the laws of the state to become the lessee of said land. This relinquishment is made and accepted by all parties subject to the approval of the Commissioners of the Land Office of said state and a new appraisement of said land if deemed necessary and ordered by said commissioners."

The remainder of the instrument merely recited that no waste had been committed.

Plaintiff testified that this instrument was sent to the School Land Commissioners.

On the same day, August 6, 1934, John W. Smith paid plaintiff $1,000 and executed and delivered to plaintiff a promissory note for $1,500, and to secure the note executed and delivered to plaintiff a chattel mortgage on the insured house and other improvements on the land, together with the lease rights that went with the improvements. This chattel mortgage was filed in the office of the county clerk of Jackson county August 11, 1934.

On August 15, 1934, John W. Smith signed as lessee a lease on the land from the Commissioners of the Land Office to him as lessee.

On August 20, 1934, at a meeting of the Commissioners of the Land Office, the transfer of the lease from plaintiff to Smith was approved. On the same day the lease, which had been signed by Smith on August 15, 1934, was executed by the Commissioners of the Land Office and mailed to Smith.

On August 22, 1934, the house insured was destroyed by fire.

Plaintiff testified that Smith was paying $2,500 for the lease, improvements and possession, that the lease to Smith was received by Smith August 23, 1934, and that he had not closed the deal. Of the purchase price Smith paid him $1,000 and delivered him the note for $1,500 and the chattel mortgage. Possession was to be given when the relinquishment had been approved by the commissioners.

At the trial, which was had March 30, 1935, plaintiff stated that he still looked to Smith for payment of the note, that Smith was in possession of the land, that he had not returned the $1,000 to Smith, and that he still held the note for $1,500. He further stated that he was to receive from Smith one-fourth of the cotton and one-third of the grain as provided in the chattel mortgage. The mortgage contained an agreement by Smith to pay one-fourth of the cotton and one-third of other crops to apply on interest and principal of the note. The mortgage had not been released. Smith prepared the land for wheat in October, 1934.

Defendant's demurrer to plaintiff's evidence was overruled, as was its motion for a directed verdict at the close of all the evidence. The jury returned a verdict for plaintiff for $1,000, on which judgment was entered. Defendant's motion for new trial was overruled, and defendant appeals.

Defendant urges its assignments of error under the general proposition that the judgment is contrary to the law and the evidence, in that the evidence established, as a matter of law, that a change took place in the title or interest or possession of the insured property, and that assured was not at the time of the loss the sole and unconditional owner in fee of the property, and that, therefore, under the terms of the policy the company was not liable.

Plaintiff takes the position that there was no more than an executory contract of sale between Drury and Smith, and that there had not been such a change in the title, interest or possession of the property insured as to void the policy, and that while the contract was executory Drury was still the unconditional owner of the insured house.

No written contract was entered into by the parties, and the correct conclusion must be reached upon consideration of the documentary evidence, the acts of the parties, and such oral testimony as is competent.

The documentary evidence consists of the relinquishment by Drury, the lease signed by Smith, and the note and chattel mortgage given by Smith to Drury.

How long the parties may have negotiated before coming to an agreement is not disclosed. The record shows that on August 6, 1934, the parties having agreed upon a price of $2,500 for the lease and improvements, Smith paid Drury $1,000 in cash and executed and delivered to him a promissory note for $1,500 secured by chattel mortgage on the lease and improvements. On the same day Drury executed the relinquishment. On August 15, 1934, Smith signed the new lease and on August 20, 1934, the relinquishment from Drury to Smith and the new lease to Smith were approved by the Commissioners of the Land Office. The chattel mortgage was filed August 11, 1934. The loss occurred August 22, 1934.

Plaintiff testified that Smith was to pay $2,500 for the lease and improvements and was to have a clear title and possession. The mortgage was filed and was still outstanding at the time of the trial. Plaintiff said he was still looking to Smith for payment of the notes. The parties appear to

have been entirely confident that a lease to Smith would be approved, as there is no evidence whatsoever as to what should be done in regard to the money paid and the note and mortgage in case the relinquishment were not approved and the lease to Smith granted. No provision for placing the money and the papers in escrow was made. No conveyance by bill of sale or otherwise was delivered by Drury to Smith, nor was there any agreement that such conveyance should ever be delivered. There remained nothing for either to do to pass the title to the improvements nor to secure the new lease. The question of possession was merely an incident, as it is of everyday occurrence that leases are taken on farms the possession of which is in another for the crop year. Here that condition did not exist. Drury as lessee was himself in possession of the land. He was in possession under a state lease. He relinquished in favor of Smith. He accepted the $1,000 with no condition or stipulation that it was to be returned in any event. He took the note for $1,500, which he still held at the time of the trial. He accepted a chattel mortgage on the lease and improvements, which mortgage declared Smith to be the full owner of the property. Smith went into possession of the land and prepared the wheat ground that fall. Drury said that Smith was paying the third and fourth of the crops under the mortgage. The parties by their acts both before and after the fire loss treated the transaction as complete and they are bound by their acts.

Under the facts developed on the trial, it is clear that, as a matter of law, a change had taken place, prior to the fire, in the title or interest or possession of the insured property. Likewise, it is clear that at the time of the loss the plaintiff was not the sole and unconditional owner in fee of the property. Phoenix Ins. Co. of Brooklyn, N. Y., v. Quinette, 36 Okla. 384, 128 P. 722, and the numerous authorities therein cited.

Having reached these conclusions, it follows that the trial court erred in overruling defendant's demurrer to plaintiff's evidence and in overruling defendant's motion for a directed verdict in its favor at the close of the evidence. These errors were properly presented in the motion of defendant for a new trial and are properly before this court for review.

Defendant also assigns as error the giving by the court of its instruction No. 2, by which the court submitted to the jury for its decision the question whether or not there had been a change of title and whether or not plaintiff was the unconditional owner of the property at the time of the loss.

Having ruled adversely to defendant on its demurrer to plaintiff's evidence and on its motion for a directed verdict in its favor, the court apparently followed his theory of the case in submitting to the jury purely legal questions. In this the court erred.

Under the terms of the policy it was null and void in the hands of plaintiff, and defendant is not liable.

The judgment is reversed, with instructions to the trial court to enter judgment for defendant.

The Supreme Court acknowledges the aid of Attorneys N. C. Barry, D. H. Wilson, and E. C. Fitzgerald in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Barry and approved by Mr. Wilson and Mr. Fitzgerald, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration by a majority of the court, this opinion, as modified, was adopted.

OSBORN, C. J., and WELCH, PHELPS, CORN, and HURST, JJ., concur.